## McDERMOTT et al. v. FLETCHER.

(Supreme Court, Appellate Division, First Department.   March 20, 1913.)

1. APPEAL AND ERROR (§ 715*)—REVIEW—EVIDENCE NOT ADMITTED AT TRIAL.

Specifications printed in the record, but shown not to have been received in evidence, nor marked for identification, cannot be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2964, 2965; Dec. Dig. § 715.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EVIDENCE (§ 442*)—PAROL EVIDENCE—INTENTION OF PARTIES.

Where a contract for the alteration of a hotel was silent as to the order in which the work was to be done, and one of the contractors had given testimony from which an inference to the contrary might be drawn, it was error to exclude testimony for the owner that it was understood that the work was to be done without interfering with the business of the hotel.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1874–1899; Dec. Dig. § 442.*]

3. CONTRACTS (§ 349*)—ALTERATION OF BUILDING—ACTION FOR CONTRACT PRICE—ADMISSION OF EVIDENCE—LETTER.

In an action for the contract price of alterations in a hotel, where there was an issue as to whether it had been agreed by the contractor as a condition of receiving defendant's check that the remaining work should be postponed until the following spring, the defendant's letter accompanying the check containing the statement that the payment was made and accepted on the understanding that it was not an approval or an acceptance of the work then done was admissible.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1781–1818; Dec. Dig. § 349.*]

4. CONTRACTS (§ 352*)—ALTERATION OF BUILDING—ACTION FOR CONTRACT PRICE—QUESTION FOR JURY—POSTPONEMENT OF PERFORMANCE.

On evidence in an action to recover a balance claimed to be due for alteration work on a hotel, held, that the question as to whether it had been agreed by plaintiff as a condition of accepting defendant's check on account that the remaining work should be postponed until the following spring was for the jury.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1200, 1824–1828; Dec. Dig. § 352.*]

5. CONTRACTS (§ 237*)—MODIFICATION—CONSIDERATION—CHECK.

A check on account given by an owner to a contractor as a condition of the contractor's postponement of the remaining work until spring was a sufficient consideration for an agreement to postpone, and would defeat a recovery for the balance in an action brought before that time.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1119–1122; Dec. Dig. § 237.*]

Appeal from Trial Term, New York County.

Action by James L. McDermott and another against Austin B. Fletcher. From a judgment entered upon a verdict in favor of the plaintiffs, and from an order denying his motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Safford A. Crummey, of New York City, for appellant.

John Bogart, of New York City (I. Weckstein, of New York City, on the brief), for respondents.

LAUGHLIN, J. This is an action to recover a balance agreed to be paid by the defendant to the plaintiffs for work, labor, and services, less the cost of performing certain work which plaintiffs claim they were prevented from doing.

The plaintiffs were copartners engaged in the business of building construction work, and the defendant was the executor of H. J. Braker, deceased, who evidently died seised of the premises known

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as 42 West Thirty-Fifth street, upon which the Hotel Gregorian had been erected. As the hotel was originally constructed, there were six suites of rooms on each floor, each suite consisting of a parlor, bedroom, and bath. The defendant, who as executor was conducting the hotel through one Ritchey as "director" or "manager," determined to change each suite into single room suites, which required the construction of a bathroom for the parlor of each of the former suites. Plans and specifications for the work and material required to make these changes had been prepared for defendant by an architect. On the 12th day of July, 1910, the plaintiffs entered into a contract in writing with the defendant for the performance of all or substantially all of the work and the furnishing of all of the material incident to these changes, excepting that relating to the plumbing; and it was provided that the work was to be done according to the drawings and specifications made by the architect, and that the contractors were to receive therefor the sum of $7,600, which the defendant agreed to pay in two installments, the first of $4,000, when the plastering was completed "except patching," and the balance when the work was completed. It was expressly provided that the work should be of "the same quality, quantity, and style as the work of the present building," and that it should be performed "in a first-class manner" and completed on or before the 1st day of September, 1910, and, if not so completed, the defendant was given the right "within 5 days at his election" to remove the contractor and to finish the work and to deduct the cost of completion from the contract price. It was further provided in the contract that, if the contractors should fail to perform any work for a period of three days, the owner might elect to deem the contract abandoned, and complete the work at the expense of the contractor, and that all payments under the contract were "to be made only on the written certificate" of the architect.

[1] The contract contains no express provision with respect to the order in which the work was to be done. Specifications printed in the record with the contract contain provisions tending to show that it was understood that the possession of the hotel was not to be delivered over to the contractors during the progress of the work, and that it was not to be closed; but a stipulation in the record shows that the specifications printed in the record were neither received in evidence, nor marked for identification, and therefore the objection to their consideration is well taken. On the 5th day after the date of the contract the plaintiffs wrote the architect, complaining that Ritchey, the manager of the hotel, stated that he could not give them the entire space to work on at once, and that it would be necessary for them to do the work in the rear of the hotel first, and that they could not disturb the front until the rear was completed, which, they charged, was not in accordance with the understanding, and would require more time, and would interfere with their payments under the contract, and added, in effect, that they would expect the payments "to be changed according to how we proceed," and expressed the hope that this might be satisfactorily arranged. Testimony given by one of the plaintiffs tends to show, as claimed in their letter, that it was understood

that the work might be continued in the front and rear of the hotel at the same time. The preliminary negotiations for the contract on the part of the defendant were conducted by Ritchey, who obtained the proposition from the plaintiffs and recommended its acceptance.

[2] The defendant attempted to show by Ritchey's testimony that during the negotiations it was understood between him and the plaintiffs that the work was to be done without interfering with the business of the hotel, but, on objections interposed by counsel for the plaintiffs, the conversations on this subject were excluded. This, we think, was error, for the reason that the contract was silent on the subject of the order in which the work was to be done, and one of the plaintiffs had been permitted to give testimony from which an inference to the contrary might be drawn. The plaintiffs, after writing the architect as stated, commenced work on or about the 19th of July, 1910, in the apartments in the rear of the hotel, and the other apartments continued to be used for hotel purposes; but plaintiffs continued to demand that they be given possession of the front apartments. There was subsequent delay in the progress of the work for which the owner was responsible; and it appears that the plaintiffs were not given possession of as many apartments at a time as they desired. According to the testimony of the architect, he justly complained of delay on the part of the plaintiffs, and charged that they did not have a sufficient force of men at work and from time to time complained both with respect to material furnished and workmanship, and that in some respects neither the material nor workmanship was in accordance with the contract.

On September 10, 1910, $2,000 was paid to apply on the contract, and on October 3d the plaintiffs requested a further payment of $2,000. Replying to this request under date of October 4th, the architect stated that there was still work to be done before the bathrooms in the rear of the hotel could be used, but that in his opinion "with a little effort" on the part of the contractors the remaining work could be finished that week, and that he would consult the defendant with respect to the payment requested. On the 3d of October the architect had written to the plaintiffs that certain work in the bathrooms in the rear of the hotel had not been finished, and that there was only one man at work there, and demanded that a sufficient force be employed to complete the work at once. On the 4th the plaintiffs replied to this letter, expressing surprise at the claim with respect to the unfinished work, and stated that they considered that they had completed the work, "with the exception of a little painting." The plaintiffs had been insisting that they be permitted to proceed with the work in the front part of the building, and by letter under date of October 13th they requested that the architects let them know when they would be permitted so to do. On the same day the architect wrote them that he saw no effort being made on their part to complete the work and making an appointment to meet them, and on that day Ritchey wrote them by specifying certain unfinished work in the rear of the hotel which rendered it impossible for the hotel to use the rooms, and asked when they intended to proceed with the work

in the front of the hotel. The plaintiffs replied to this letter on the 14th, asserting that they had been endeavoring to arrange with the architect with respect to completing the work, but had been unable to obtain any information, and insisted on their right to complete the contract. On the 14th the architect wrote the plaintiffs, stating, in effect, that they would not be permitted to proceed with the other work until they completed the work which had been started, and notified them that unless they proceeded with the unfinished work on or before October 19th, and pushed it to completion, the owner would take over the work, and finish it for their account. The plaintiffs replied to this letter the next day, stating that they were "finishing up a few little items" of work which the architect had requested them to do, and drawing his attention to the fact that they had received a communication from Ritchey asking when they intended to proceed with the work in the front part of the hotel, and, in effect, requesting information as to whether they were to be permitted to proceed with the work.

After further communications between the plaintiffs with respect to the unfinished work in the rear of the hotel, the architect wrote them on the 26th of October asserting that, as they had made no effort during the preceding week to complete the work, the owner had taken charge of the work, and had that day made a contract for completing the painting of the bathrooms for $132, and had charged the same to their account, and would notify them later with regard to the tile, plaster, and other work which he claimed they had not performed. One of the plaintiffs testified that they took their men "off the job around October 30th," and it would seem that after October 26th plaintiffs stored their material in the cellar, and swept and cleaned the apartments, but whether they did any other work before leaving does not appear. Between the 26th day of October and the 9th day of December considerable correspondence passed between the parties, and they or their representatives had many interviews; but we deem it sufficient for the purposes of this appeal to say with respect thereto that the plaintiffs were insisting upon being allowed to complete the work and upon a further payment on account of work performed, and that, if they were not to be allowed to finish the work at that time, they be paid the full contract price, less $600, for which, according to their testimony, they claimed they could complete it; and defendant claimed that, if plaintiffs were then permitted to proceed with the work in the front part of the hotel, it would result in a great loss to the hotel, for the rooms in the rear in their uncompleted condition could not be used for guests, and, furthermore, that the delay in doing the work in the rear of the hotel had resulted in the arrival of the busy and most profitable hotel season, and they also contended that the work which the plaintiffs had already performed had not been done in accordance with the requirements of the contract.

These conflicting claims resulted in a proposition on the part of the defendant to pay plaintiffs $1,000 on account, and $600 more when the plaintiffs should put in partition blocks in the closets in the front part where they had taken out the doors and door casings for use in

the rear rooms, and to have the remaining work go over until spring, which proposition, according to testimony introduced by plaintiffs, they rejected as often as made; but according to testimony in defendant's behalf his proposition was finally accepted in a modified form, and it was agreed that the plaintiffs would consent to postponing the rest of the work as suggested, provided the defendant would then pay them the $1,000 on account.

[**3, 4**] According to the testimony of the attorney for the defendant, the final acceptance of the proposition in the modified form was made to him by one of the plaintiffs over the telephone on the 9th day of December, 1910, and thereupon he sent a check for $1,000 drawn by the defendant to the order of the plaintiffs by mail to the plaintiffs, which, the uncontroverted evidence shows, was received, cashed, and the proceeds retained by them. This check was inclosed in a letter written in the name of the defendant by his attorney, which was offered in evidence by the defendant, and, on objection interposed by counsel for the plaintiffs that it was irrelevant, immaterial, incompetent, and a self-serving declaration, it was excluded. It was marked for identification, and is as follows:

"In re Gregorian Hotel Contract.

"Complying with the request of your Mr. Hanigan I inclose check to your order for $1,000.00 on account of your contract at the Hotel Gregorian. This payment is made and accepted by you with the distinct understanding that it is in no way considered an approval or acceptance of the work as at present installed by you, and with the distinct understanding that all questions in difference between you and the executors of the Estate of Henry J. Braker, deceased, are reserved for adjustment upon completion of the bathrooms in the front or northern part of the hotel.

"Kindly acknowledge receipt, and oblige."

On the motion for the dismissal of the complaint which was based in part on the receipt of the check, the court said that the plaintiffs did not accept the $1,000 on the terms on which it was offered, and that there was no evidence of an agreement of extension.

Counsel for the defendant requested the court to instruct the jury as follows:

"That if the jury find that the payment of $1,000 on December 9, 1910, to the plaintiffs by the defendant extended the time of the completion of the contract until the following May or June, 1911, then at the time the action was commenced there was no sum due the plaintiffs, and the plaintiffs are not entitled to recover."

The court read this request to the jury, and said:

"I charge that and at the same time it is proper to call your attention to the fact that the plaintiffs deny that they received the $1,000 under any such condition, and it is proper for me to instruct you that a person who is indebted to another, and who pays that debt and accompanies the payment of it with a condition, that does not bind the other party at all unless that condition is accepted. I speak of that because in a letter which contained the $1,000 check it said that—I forget the exact language—but it stated a provision that it was given upon the understanding that such and such a thing was to be done. Now, unless the evidence shows that the contractors agreed to that condition, that condition does not bind the contractors at all, and the contractors deny that they agreed to any such condition. That is a question of fact for you to determine."

It does not appear that there was any repudiation by the plaintiffs of the conditions which the defendant attempted to impose on delivering the check other than the testimony of one of the plaintiffs to the effect that, after receiving the check and letter, he called the defendant's attorney on the telephone, and thanked him for the check, and demanded settlement for the balance of the contract price, less the cost of completion, which he claimed would be only $600. This was controverted by the testimony of the attorney for defendant that he never heard from plaintiffs after sending the check, and therefore the jury might have found that plaintiffs acquiesced in the conditions imposed if they were not deemed to have acquiesced as matter of law by using the check.

We are of opinion that the court erred in excluding the letter, and in ruling that plaintiffs were not bound by the conditions on which the check was sent. There was a question of fact as to whether or not it had been agreed by the plaintiffs as a condition of receiving this payment that the remaining work should be postponed until the following spring; and in determining that question of fact the letter became quite material. The defendant took the position that the plaintiffs were not entitled to any further payment on the contract at that time, and that he only consented to make the payment upon the understanding that the remaining work was to be postponed. The letter shows that it was the defendant's intention in giving the check not to recognize an existing liability to that extent on the contract or to relieve the plaintiffs from completing the contract; but that it was expected that the plaintiffs were to finish the work, and the acceptance and use of the check sent and accepted on those conditions, particularly if there was no attempt to repudiate the conditions, tends to sustain defendant's contention that the completion of the work was to be postponed. On February 1st thereafter plaintiffs brought this action to recover the balance of the contract price and for extra work less the cost of completing the work.

[5] If the check was given as claimed on the part of the defendant as a condition of postponing the remaining work until spring, that was a sufficient consideration, and would defeat a recovery. Dunn v. Whalen, 120 App. Div. 729, 105 N. Y. Supp. 588.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.